UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 4:24-mc-00001-SEB-KMB |
| EXCHANGE PUB + KITCHEN, | ) ) ) | |
| Respondent. | ) ) | |

**ORDER**

On March 12, 2025, we adopted the Magistrate Judge's Report and Recommendation ("R&R"), dkt. 19, finding The Exchange Pub + Kitchen ("Respondent" or "The Exchange") and Ian Hall ("Hall") in contempt of court based on their failure to comply with an administrative subpoena issued by Petitioner the Equal Employment Opportunity Commission ("EEOC"). Dkt. 24 (hereinafter, the "Contempt Order"). The Contempt Order directed The Exchange to pay the EEOC's attorney's fees and costs and detailed a progressive set of monetary sanctions to be imposed for each day of The Exchange's (and Hall's) continued noncompliance with the EEOC's subpoena. Now before the Court is the EEOC's Motion for Attorney's Fees and Costs, dkt. 22, submitted pursuant to the Contempt Order. For the reasons set forth below, that motion is **GRANTED**. Furthermore, given Hall's and The Exchange's noncompliance in the weeks following their receipt of the Contempt Order, the Court proceeds herewith to enforce the monetary sanctions set forth in the R&R and adopted by the Contempt Order.

1

## BACKGROUND

On May 15, 2024, the EEOC served a subpoena on The Exchange as part of an investigation of a charge of sex discrimination and retaliation brought by a former employee of The Exchange, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 to -17. Dkt. 2-7. The Exchange did not comply with or respond to the subpoena.

On September 24, 2024, the EEOC initiated this action by filing an Application for an Order to Show Cause why an Administrative Subpoena Should Not be Enforced, dkt. 1, which application the Court granted on September 30, 2024, dkt. 5. Respondent was ordered to answer the EEOC's application by October 10, 2024, and to appear in court the next day, October 11, 2024, to show cause why it should not be subject to the subpoena. *Id.* The EEOC provided proof of service showing that Respondent was served with the EEOC's application, the accompanying memorandum, and the Court's order on October 4, 2024. Dkt. 8.

At the October 11, 2024, show cause hearing, Respondent failed to appear, and, as such, the Court orally granted the EEOC's Motion to Enforce the Subpoena, dkt. 9. On October 17, 2024, the Court, by written order, directed Respondent to produce the documents requested by the EEOC's original subpoena within thirty days (by November 17, 2024). Dkt. 11. Once again, the EEOC filed proof of service demonstrating that Respondent had received the order on October 23, 2024, dkt. 12, and once again, Respondent did not comply.

On December 11, 2024, the Court ordered Respondent to show cause why it should not be held in contempt of court. Dkt. 15. Hall himself was directed to appear at a January 31, 2025, show cause hearing before the Magistrate Judge in order to "show cause why he should not be sanctioned for Respondent's failure to comply with this Court's October 17, 2024, Order." *Id*. at 2. We also forewarned Respondent that contempt sanctions would be imposed if its recalcitrance continued. *Id.* Both Hall and Jesse Johnson, the "person in charge" at The Exchange, were personally served on December 13, 2024. Dkt. 16. Unfortunately, neither appeared at the January 31, 2025, show cause hearing on Respondent's behalf. Dkt. 18.

Thereafter, on February 5, 2025, the Magistrate Judge issued an R&R laying out the contempt sanctions to be imposed on Respondent, including the payment of reasonable attorney's fees and costs to the EEOC for the expenses incurred due to Respondent's repeated failures to comply with the EEOC's subpoena and subsequent court orders, as well as daily fines, the potential seizure of Respondent's assets, the potential arrest and incarceration of Hall, and the potential locking of The Exchange. Dkt. 19.

On March 12, 2025, we issued the Contempt Order, adopting the terms of the R&R. Dkt. 24. From this point, Hall and The Exchange would have begun to face the sanctions outlined in the R&R beginning on March 17, 2025. After learning that the U.S. Marshals Service had been delayed in effecting service until March 20, 2025, we afforded Respondent an additional fourteen days to "serve and file an objection," pursuant to Federal Rule of Civil Procedure 72(b). On April 3, 2025, following the expiration of

3

Respondent's opportunity to object to the R&R, we affirmed our adoption of the R&R and the progressive sanctions contained therein and issued "a writ of body attachment directing the United States Marshals Service to arrest Mr. Hall [to] be taken into custody and detained unless and until he cure[d] his contempt by turning over the records requested by the EEOC." Dkt. 28, 29.

On April 7, 2025, the parties appeared before the Magistrate Judge for a hearing on Hall's arrest and the Writ of Body Attachment. Dkt. 30. At that hearing, Hall stated he intended to comply with the EEOC subpoena by the end of that week. *Id.* Hall was released from custody, and the EEOC was ordered to file a status report if it believed Respondent had still failed to comply with the subpoena. *Id.* No such filing was made by the EEOC, which allows us to conclude that Respondent has since complied with the EEOC's subpoena.

On March 5, 2025, in accordance with the Magistrate Judge's R&R, the EEOC moved for attorney's fees and costs. Dkt. 22. The Exchange has filed no response, and the deadline for doing so has now passed. S.D. Ind. L.R. 7-1(c)(3)(a). The EEOC's motion is thus briefed and ripe for ruling.

## DISCUSSION

### I. Attorney's Fees & Costs

The Contempt Order provides that the EEOC is entitled to:

> attorney's fees and costs associated with the preparation and filing of the Application for Order to Show Cause Why An Administrative Subpoena Should Not be Enforced (Dkt. 1) and the Motion to Find Respondent in Contempt of Court and for Sanctions (Dkt. 13), as well as the time for counsel

4

> for EEOC's appearances at the hearing on October 11, 2024, and [January 31, 2025].

R&R 4, dkt. 19; dkt. 24. The EEOC requests a total of $23,058.86 in attorney's fees and costs, reflecting $22,100.00 in attorney's fees and $953.86 in costs. Pet'r's Mot. Att'y's Fees & Costs 1, dkt. 22. Of the total attorney's fees, $22,012.50 are sought for the work of EEOC attorney Alysia Robben ("Robben"), and the remaining $87.50 are sought for the work of paralegal Lectric Chandler ("Chandler"). *Id.* at 8.

The Supreme Court has held that "[f]ederal courts possess certain 'inherent power,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). These powers include the ability to impose sanctions for abuses of the judicial process, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991), including the compensation of attorney's fees and costs that are incurred because of misconduct, *Goodyear Tire & Rubber Co.*, 581 U.S. at 103–04.

In assessing reasonable attorney's fees, district courts begin with a lodestar amount: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). What constitutes a reasonable hourly rate is determined "based on market rates for services rendered." *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). The burden of proving the "market rate" is on the fee applicant; once the fee applicant does so, it is the opposing party's duty to demonstrate why a lower rate should be awarded. *Spegon v. Catholic Bishop of Chi.*, 175

5

F.3d 544, 554–55 (7th Cir. 1999). Typically, the party seeking an award of attorney's fees meets its burden by submitting documentary evidence supporting the hours and rates requested. *Id*. Where that documentation is insufficient, or the hours were not "reasonably expended," "the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433–34. An assessment of attorney's fees and costs in a civil contempt setting should be compensatory, rather than punitive, and should therefore represent an accurate estimate of the costs the party seeking attorney's fees would not have incurred but for the contemnor's bad-faith conduct. *Goodyear Tire & Rubber Co.*, 581 U.S. at 103–04; *see also Commodity Futures Trading Commission v. Premex, Inc.*, 655 F.2d 779, 785–86 (7th Cir. 1981).

  Applying these legal principles to the case at bar, we first assess the reasonableness of the EEOC's requested hourly rates, which include $375 per attorney hour and $125 per paralegal hour. To demonstrate the reasonableness of these rates, the EEOC cites caselaw from the Indiana market showing the rates of similarly-experienced employment attorneys as well as the declaration of Andrew Dutkanych ("Dutkanych"), dkt. 23-3, an Indianapolis-based attorney with comparable experience to Robben, who herself "has practiced law for over [seventeen] years, with [fourteen] years of experience in trial work, [ten] years of which were in the area of employment law." Mem. Supp. Pet'r's Mot. Att'y's Fees & Costs 4, dkt. 23. Dutkanych's Declaration attests that he and another partner at his firm, with twenty-two and fourteen years of experience, respectively, bill at an attorney rate of $375 per hour. Dutkanych Decl. ¶¶ 4–6, dkt. 23-3.

6

Dutkanych also avers that his firm pays paralegals the EEOC's requested hourly rate of $125. *Id.* at ¶ 7.

Our Court has previously found similar attorney hourly rates reasonable. For example, in *Downing v. SMC Corporation of America*, an FLSA case, we held that rates of $525 and $415 per attorney hour, well in excess of those sought by the EEOC in this case, were appropriate because they reflected the rates that those attorneys would ordinarily charge an hourly-billed client. No. 1:20-cv-01954, 2023 WL 2526280, at *2–*3 (S.D. Ind. Mar. 14, 2023) (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)). The EEOC has thus satisfied its burden of demonstrating that the requested attorney and paralegal hourly rates of $325 and $125, respectively, are reasonable.

Once the fee-seeking party has established that the hourly rates it seeks are reasonable, as the EEOC has done here, the burden shifts to the opposing party to "establish a good reason why a lower rate is essential to assess a 'reasonable attorney's fee.' " *Gusman*, 986 F.2d at 1151. Where the opposing party fails to do so, the rate requested by the fee applicant and adequately supported by the evidence is "presumptively appropriate." *Id.* Here, Hall and The Exchange have not challenged the rates sought by the EEOC. Therefore, we conclude that the requested rates are appropriate and reasonable.

Next, we must assess the number of hours requested in a fee petition and ensure that the party seeking fees exercised adequate "billing judgment." *Hensley*, 461 U.S. at 434, 437. The EEOC provides a detailed account of the hours expended at different stages of these proceedings, accompanied by declarations and an affidavit. Dkt. 22–23.

7

Robben's fees are based on a total of 58.7 attorney hours, reflecting work done from September 2024 through February 2025, including drafting and filing the EEOC's applications, its motion for attorney's fees, and all accompanying documents; reviewing and effecting service of court orders; and preparing for and attending hearings. *Id.* at ¶ 7. With respect to researching and drafting its filings,

> Ms. Robben . . . spent 13 hours[1] to draft and file the EEOC's application to show cause why its administrative subpoena should not be enforced, 14.75 hours to research, draft, and file the EEOC's motion to find Respondent in contempt of court and for sanctions, and 13.5 hours to research, draft, and file the EEOC's motion for attorney's fees.

Mem. Supp. Pet'r's Mot. Att'y's Fees & Costs 7, dkt. 23.

To demonstrate the reasonableness of these requested hours, the EEOC cites several recent cases from within the Seventh Circuit finding similar or longer timeframes for drafting motions to compel discovery and motions for attorney's fees reasonable. *See, e.g.*, *Paredes v. Cantu*, No. 4:15-CV-88, 2017 WL 1906165, at *2 (N.D. Ind. May 10, 2017) (finding forty hours on a motion to compel reasonable and thirty hours on a motion for attorney's fees unreasonable; and awarding fifteen attorney hours for the latter motion). Because the attorney hours requested here are commensurate with those

---

[1] At one point in the EEOC's Memorandum, it states that Robben spent fourteen hours on the application to show cause why the administrative subpoena should not be enforced. Mem. Supp. Pet'r's Mot. Att'y's Fees & Costs 5, dkt. 23. However, on page 7 of the same memorandum, and in the more detailed time log provided as an exhibit, dkt. 23-1, the EEOC claims only thirteen attorney hours for the application. Because the EEOC's expenditure of thirteen hours on the application aligns with its time log entries reflecting a sum total of 58.7 attorney hours, we regard the EEOC's fourteen-hour reference as a scrivener's error.

awarded in similar cases, we find that the EEOC has satisfied its burden of demonstrating that its attorney hours were reasonably expended.[2]

The EEOC's time log also details a cumulative 9.7 attorney hours allocated towards reviewing and serving court orders. Of particular note are the 6.5 hours spent reviewing and serving the Court's September 30, 2024, Show Cause Order. While this entry stands out as excessive compared to the other time spent on service of process (e.g., 2.4 hours spent on identical tasks relating to the October 17, 2024, Order to Enforce Administrative Subpoena and .8 hours on the December 11, 2024, Show Cause Order), the EEOC explains that this investment of time was the result of "Respondent's failure to register its business with a registered agent . . . and by Hall's failure to accept service by certified mail," both of which necessitated greater individual effort and research. Mem. Supp. Pet'r's Mot. Att'y's Fees & Costs 8, dkt. 23. We accept that explanation as

---

[2] In assessing the reasonableness of the "time and effort devoted by counsel to the pursuit of fees," the Seventh Circuit has characterized the expenditure of "fifteen minutes to preparing [a] fee petition for every hour spent litigating the merits" as "excessive" and thus unreasonable. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999) (citing *Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988)) (finding it "patently unreasonable . . . to expend the same number of hours, or almost as many, on [a] fee petition as [was] expended on the merits"). In *Ustrak*, for instance, the Seventh Circuit "disallow[ed] two-thirds of the [requested] lawyer and student hours" (108.5 and 31.95 hours, respectively) allocated towards the preparation of two fee petitions. 851 F.2d at 988. *Ustrak*, however, involved a fee applicant's request for more than 500 attorney hours, most of which time was expended throughout the course of ordinary (albeit protracted) civil litigation. The case at bar, by contrast, involves significantly fewer hours (58.7 attorney hours), which (1) makes attaining a specific minute-to-hour ratio more difficult for a filing which, at bottom, still takes some minimum reasonable amount of time to draft, and (2) would not have been outlaid but for Respondent's persistent noncompliance. In these circumstances, we view the EEOC's allocation of 13.5 attorney hours on the fee petition as reasonable.

reasonable. Accordingly, we find that the EEOC's expenditure of 9.7 hours in reviewing and effecting service of court orders warrants our approval.

The EEOC seeks an award for 0.7 paralegal hours of work done by Chandler, who drafted the process servers' respective declarations, dkt. 12-1, 15-1. This brief timeframe, split between fewer than twenty-five minutes on one document and twenty on the other, and the subsequently modest fee requested, reflects a reasonable use of the EEOC's time and resources.

With respect to the total requested hours, we are satisfied that 59.4 hours represent a reasonable expenditure of the EEOC's time in its attempts to bring Respondent into compliance with the original subpoena. The EEOC's time log, as well as the cited cases from within this Circuit, support our conclusion that the EEOC exercised adequate "billing judgment." *Hensley*, 461 U.S. at 434, 437. Insofar as individual time entries and the EEOC's speed and efficiency could be scrutinized, Respondent again has not objected and also has failed to identify any evidence demonstrating that the EEOC's billing was unreasonable or excessive. We, therefore, shall award fees to the EEOC covering its investments of 58.7 attorney hours and 0.7 paralegal hours.

The EEOC additionally requests reimbursement of $953.86 as costs, incurred from four events: (1) $11.82 for attempted service of the September 30, 2024, Show Cause Order on Hall and The Exchange via USPS certified mail; (2) $25.93 for successful service of the September 30, 2024, Show Cause Order on Hall and The Exchange via UPS Next Day Air; (3) $440.65 for in-person service of the Court's October 17, 2024, Order on Motion to Enforce Subpoena; and (4) $475.46 for in-person service of the

Court's December 11, 2024, Show Cause Order. The initial service of the September 30, 2024, Show Cause Order was rendered ineffective by Respondent's failure to sign off for delivery via USPS certified mail, *see* Decl. Camille De Santiago, dkt. 8-2, and the personal service in the latter two instances was required by the respective orders issued by the Court, dkt. 11, 15. The transfer of such costs to Respondent is a reasonable exercise of the Court's power to compensate the EEOC for expenditures arising from Hall and The Exchange's failure to respond to the EEOC's subpoena and to comply with court orders. *Goodyear Tire & Rubber Co.*, 581 U.S. at 103–04, 106.

## II.     Civil Contempt Sanctions

In addition to our order awarding the EEOC a reimbursement of its attorney's fees and costs, the R&R laid out a series of progressive financial sanctions to be imposed on Hall and The Exchange for their continued, persistent failures to comply with the EEOC's subpoena. These sanctions consisted of a $1,000 fine against Hall and The Exchange (respectively) for their failure to appear at the January 31, 2025, Show Cause Hearing. R&R 5, dkt. 19. For the five days following the Court's adoption of the R&R and the expiration of Respondent's deadline to comply with the EEOC's subpoena, we levied daily monetary sanctions against "both The Exchange and Mr. Hall," who were "each [progressively] fined" as follows: $500; $1,000; $1,500; $2,000; and $2,500. *Id.* If (or when) the monetary sanctions proved unavailing, Respondent's noncompliance was set to (and ultimately did) result in Hall's arrest and possible imprisonment. *Id.*

"[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through

11

obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Civil contempt sanctions must provide contemnors the opportunity to purge their sanctions by complying with the court's order. *F.T.C. v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009). In the time since May 2024 (when the EEOC initially served its subpoena), The Exchange and Hall have had numerous opportunities to cure their noncompliance and purge the financial sanctions through multiple show cause orders and hearings as well as extensive time to object or otherwise respond to the Contempt Order. At each turn, however, Respondent's obdurate refusal to yield to the Court's directives rendered the EEOC's (and, for that matter, the Court's) best efforts unavailing, ultimately necessitating Hall's arrest and detention by the U.S. Marshals Service in order to secure his compliance. Accordingly, we reaffirm the progressive monetary sanctions outlined in the Contempt Order, dkt. 19, 24, fining both The Exchange and Hall **$8,500.00** each (totaling $17,000.00 in monetary sanctions) for their noncompliance, payable to the Clerk of Court.

## CONCLUSION

For the reasons detailed above, the EEOC's Motion for Attorney's Fees and Costs is **GRANTED**. Dkt. 22. Petitioner is awarded attorney's fees and costs in the amount of **$21,928.86**. Within **five (5) days** of the date of this Order, the EEOC shall provide payment instructions to The Exchange, after which The Exchange shall pay the total award to the EEOC forthwith.

Additionally, The Exchange and Hall are both **SANCTIONED** in the amount of **$8,500.00** each, for a sum total of $17,000.00 in monetary fines, based on their contempt of court. All fines shall be paid forthwith to the United States District Court Clerk.

IT IS SO ORDERED.

Date: 6/25/2025

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

John Arthur Kraft
YOUNG LIND ENDRES & KRAFT
johnk@ylek.com

Alysia D Robben
U.S. Equal Employment Opportunity Commission
alysia.robben@eeoc.gov

Financial Clerk